IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GWENN HILLER, | § | |
|    Plaintiff | § | |
| | § | C.A. NO. 09-4036 |
| v. | § | |
| | § | |
| MERITAGE HOMES OF TEXAS, LLC | § | |
|    Defendant | § | JURY TRIAL DEMANDED |

## NOTICE OF FILING OF SUPPLEMENTAL AUTHORITY

Still pending before the Court is Defendant's Motion to Compel Arbitration (Docket Entry No. 6). Last summer, the parties submitted supplemental briefing regarding the Dodd-Frank financial reform statute's invalidation of the Meritage Corporation arbitration agreement[1] (Docket Entry Nos. 22, 26 and 29). In the last two briefs, the Defendant asserted that the Dodd-Frank Act did not apply retroactively (Docket Entry No. 26) and the Plaintiff explained why it did (Docket Entry No. 29).

Earlier this week, in *Pezza v. Investors Capital Corp.*, 2011 U.S. Dist. LEXIS 20038 (D. Mass, March 1, 2011), a federal district court in Massachusetts issued the first opinion considering whether § 922 of the Dodd-Frank Act applies retroactively. This is precisely the issue the parties briefed in this case. In a lengthy, reasoned opinion, the Court applied *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994), and its progeny before concluding that the statute **does** apply retroactively because § 922 merely dictates what forum may hear a case without altering any of the parties' substantive rights or obligations. *Pezza*, 2011 U.S. Dist. LEXIS 20038 at *21-23. A copy of the opinion is attached hereto as Exhibit A.

---

[1] Meritage Corporation is not a party to this case. Hiller has explained in her briefing why Meritage Homes of Texas, LLC has no authority to invoke the Meritage Corporation arbitration agreement against her.

This authority simply confirms Hiller's argument that the Dodd-Frank Act applies. The plain language of the Act, moreover, invalidates the entire Meritage Corporation arbitration agreement, which unquestionably requires arbitration of claims arising under 18 U.S.C. § 1514A. The Court should deny Meritage Homes of Texas, LLC's motion so that the parties may begin moving forward with this litigation.

      Respectfully submitted,

      DOW GOLUB REMELS & BEVERLY, LLP

      s/ Andrew S. Golub
      Andrew S. Golub
      Fed. ID No. 13812
      State Bar No. 08114950
      9 Greenway Plaza, Suite 500
      Houston, Texas 77046
      Telephone: (713) 526-3700
      Telecopier: (713) 526-3750

      ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2011, a true and correct copy of the foregoing was served on the following counsel of record via the Court's ECF system:

John G. Harrison
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
700 Preston Commons
8117 Preston Road
Dallas, Texas 75225

      s/ Andrew S. Golub
      Andrew S. Golub



1 of 1 DOCUMENT

PAUL PEZZA, Plaintiff, v. INVESTORS CAPITAL CORPORATION, INVESTORS CAPITAL HOLDINGS, LTD., and TIMOTHY MURPHY, Defendants.

CIVIL ACTION NO. 10-10113-DPW

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2011 U.S. Dist. LEXIS 20038

March 1, 2011, Decided
March 1, 2011, Filed

**COUNSEL:** [*1] For Paul Pezza, Plaintiff: Alan H. Crede, LEAD ATTORNEY, Conforto Law Group, Boston, MA.

For Investors Capital Corp., Investors Capital Holdings, LTD, Timothy Murphy, Defendants: Guy P. Tully, LEAD ATTORNEY, Jackson Lewis LLP, Boston, MA.

**JUDGES:** DOUGLAS P. WOODLOCK, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** DOUGLAS P. WOODLOCK

**OPINION**

MEMORANDUM AND ORDER

The enactment last year of the sprawling 2,319 page Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (the "Dodd-Frank Act" or the "Act"), imposes, among its many initiatives, the refinement and restriction of what has been restated by the Supreme Court as "a national policy favoring arbitration of claims that parties contract to settle in that manner." *Preston v. Ferrer, 552 U.S. 346, 353 (2008)* (quoting *Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)*) (internal quotation marks omitted). Of specific concern in this case is *Section 922* of the Dodd-Frank Act which amends the whistleblower protection set forth in the Sarbanes-Oxley Corporate and Criminal Fraud Accountability Act of 2002 (the "Sarbanes-Oxley Act"), *18 U.S.C. § 1514A*, by adding a new section as follows:

(e) NONENFORCEABILITY OF CERTAIN PROVISIONS WAIVING [*2] RIGHTS AND REMEDIES OR REQUIRING ARBITRATION OF DISPUTES - -

(1) WAIVER OF RIGHTS AND REMEDIES.--The rights and remedies provided for in this section may not be waived by any agreement, policy form, or condition of employment, including by a predispute arbitration agreement.

(2) PREDISPUTE ARBITRATION AGREEMENTS.--No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.

Dodd-Frank Act, § 922, 124 Stat. at 1848. This case presents the question whether the ban on pre-dispute arbitration agreements imposed by the Dodd-Frank Act regarding Sarbanes-Oxley Act whistleblower protection applies retroactively.

I. BACKGROUND

The plaintiff in this action claims he was wrongfully retaliated against, in violation of the Sarbanes-Oxley Act, after having raised concerns regarding misconduct by the defendants in connection with securities transactions. The defendants assert the threshold contention that the plaintiff's executed employment agreements obligate him to submit such a dispute to arbitration.

Exhibit A

After having complied with the administrative claims process before the Department of Labor's Occupational Safety and [*3] Health Administration, the plaintiff filed on January 26, 2010 the single count complaint before me, alleging retaliation in violation of the Sarbanes-Oxley Act's whistleblower protection, *18 U.S.C. § 1514A*. The defendants raised the obligation to arbitrate as an affirmative defense and moved to compel arbitration and either stay or dismiss this action. On July 21, 2010, while defendants' motion to compel arbitration was under advisement, the Dodd-Frank Act enacted a bar to predispute arbitration agreements for whistleblower claims brought under the Sarbanes-Oxley Act. The plaintiff, who brought this new legislative development to my attention, now contends that the Dodd-Frank Act bar is dispositive of defendants' demand for arbitration. The defendants, for their part, contend the Dodd-Frank Act bar on Sarbanes-Oxley whistleblower arbitration agreements is not retroactive.

## II. APPLICABLE LEGAL PRINCIPLES

The Supreme Court has recognized that an "apparent tension" exists between "two seemingly contradictory statements found in [its] decisions concerning the effect of intervening changes in the law." *Landgraf v. USI Film Prods., 511 U.S. 244, 263-64 (1994).* As a general rule, courts must [*4] "apply the law in effect at the time it renders its decision." *Id. at 264* (quoting *Bradley v. Sch. Bd. of Richmond, 416 U.S. 696, 711 (1974)).* However, because "[r]etroactivity is not favored in the law," courts should not construe "congressional enactments and administrative rules . . . to have retroactive effect unless their language requires this result." *Id.* (quoting *Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208 (1988))* (alteration in original).

In an effort to accommodate this tension, the Supreme Court has provided a framework for determining whether a statute should be applied retroactively:

> We first look to whether Congress has expressly prescribed the statute's proper reach, and in the absence of language as helpful as that we try to draw a comparably firm conclusion about the temporal reach specifically intended by applying our normal rules of construction. If that effort fails, we ask whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment. If the answer is yes, we then apply the presumption against retroactivity [*5] by construing the statute as inapplicable to the event or act in question owing to the absence of a clear indication from Congress that it intended such a result.

*Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37-38 (2006)* (internal quotation marks, citations, and alterations omitted). I will apply this framework in the present case.

## III. ANALYSIS

### A. Congressional Intent

1. As Expressed

The first step of retroactivity analysis asks whether Congress clearly expressed an intent to limit the temporal reach of Section 922 of the Act. *Id.* It is necessary in answering this question to look at the outset to the precise language of the statute itself. *Landgraf, 511 U.S. at 257* ("Our first question, then, is whether the statutory text on which petitioner relies manifests an intent that the . . . Act should be applied to cases that arose and went to trial before its enactment.").

Nothing in Section 922 of the Act provides an express congressional intent regarding retroactivity. The general language contained in Section 4 of the Act, which provides that "[e]xcept as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after [*6] the date of enactment of this Act," is not sufficient direction regarding the retroactive application of Section 922. *See Landgraf, 511 U.S. at 257* ("A statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date."). [1]

---

1  To date, my research has identified only one reported case discussing the retroactivity of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) (the "Dodd-Frank Act"). *See Riddle v. Dyncorp. Int'l, Inc., 733 F. Supp. 2d 743, 747-48 (N.D. Tex. 2010).* In *Riddle*, the Court found that a provision of the Dodd-Frank Act creating a three year statute of limitations for False Claims Act retaliation claims *not* to be retroactive on the basis that the Dodd-Frank Act "explicitly states in Section 4 that it is intended to take effect one day *after* its passage." *Id. at 748.* The instant case, of course, does not concern Dodd-Frank Act amendments to the False Claims Act. Moreover, for the reasons discussed in this

Memorandum and Order, I find that Section 4 is not dispositive on the Sarbanes-Oxley Act retroactivity issue before [*7] me.

Other federal statutes recently enacted contain similar bans on arbitration agreements in the employment context. For instance, Section 1553 of the American Recovery and Reinvestment Act of 2009 provides that "no predispute arbitration agreement shall be valid or enforceable if it requires arbitration of a dispute arising under this section." Pub. L. No. 111-5, § 1553, 123 Stat. 115, 301 (2009). In addition, Section 8116 of the Department of Defense Appropriations Act of 2010 prohibits federal contractors and subcontractors on large defense projects from requiring, as a condition of employment, employees and independent contractors to enter into arbitration agreements with respect to civil rights and torts claims arising out of that employment. Pub. L. 111-118, § 8116, 123 Stat. 3409, 3454-55 (2009). However, my research has not identified any case law discussing whether these two statutes should be applied retroactively.

2. By Construction

In the absence of clear congressional intent, "normal rules of construction apply" to determine a statute's temporal reach. *Lindh v. Murphy, 521 U.S. 320, 326 (1997)*. For instance, the fact that Congress has explicitly directed that another section [*8] of a given statute not be applied in pending cases may be viewed as evidence that Congress intended, at least implicitly, the remainder of the statute to apply thereto. *Cf. INS v. St. Cyr, 533 U.S. 289, 318-19 (2001)* (denying retroactive application of § 304(b) of the Illegal Immigration Reform and Immigrant Responsibility Act due to "Congress' willingness, in other sections of [this act], to indicate unambiguously its intention to apply specific provisions retroactively."); *Lindh, 521 U.S. at 336* (refusing to apply amendment to habeas corpus statute retroactively based on the "negative inference drawn from the fact that Congress explicitly made another amendment pertaining to capital offenses applicable to pending cases.").

Apart from Section 922, the Dodd-Frank Act contains other sections that also restrict the use of predispute arbitration, some of which provide indications regarding congressional intent. Generally speaking, the sections of the Act that restrict predispute arbitration can be divided into three categories: (i) sections applying to future disputes only, or (ii) sections applying to future disputes and arbitration agreements entered into after a certain time period, [*9] and (iii) sections for which Congress has not expressed any intent with respect to retroactivity.

The *first* category - sections applying to future disputes only - includes paragraph (a) of Section 921 of the Act "AUTHORITY TO RESTRICT MANDATORY PRE-DISPUTE ARBITRATION," which amended *Section 15* of the Securities Exchange Act of 1934, *15 U.S.C. § 78o*, by granting to the Securities Exchange Commission (the "Commission") the authority to restrict mandatory predispute arbitration for customers or clients of any broker, dealer, or municipal securities dealer:

> (o) AUTHORITY TO RESTRICT MANDATORY PREDISPUTE ARBITRATION.-The Commission, by rule, may prohibit, or impose conditions or limitations on the use of, agreements that require customers or clients of any broker, dealer, or municipal securities dealer to arbitrate *any future dispute* between them arising under the Federal securities laws, the rules and regulations thereunder, or the rules of a self-regulatory organization if it finds that such prohibition, imposition of conditions, or limitations are in the public interest and for the protection of investors.

Dodd-Frank Act, § 921, 124 Stat. at 1841 (emphasis added). Also included in this [*10] first category is paragraph (b) of Section 921, which amended Section 205 of the Investment Advisers Act of 1940, *15 U.S.C. § 80b-5*, by providing the Commission with the authority to restrict mandatory predispute arbitration for customers or clients of any investment adviser:

> (f) AUTHORITY TO RESTRICT MANDATORY PREDISPUTE ARBITRATION.--The Commission, by rule, may prohibit, or impose conditions or limitations on the use of, agreements that require customers or clients of any investment adviser to arbitrate *any future dispute* between them arising under the Federal securities laws, the rules and regulations thereunder, or the rules of a self-regulatory organization if it finds that such prohibition, imposition of conditions, or limitations are in the public interest and for the protection of investors.

*Id.* (emphasis added). Accordingly, Congress clearly limited the Commission's authority to restrict predispute arbitration to *future* disputes arising under Section 921 of the Act.

The *second* category - sections applying to future disputes and arbitration agreements entered into *after* a certain time period - includes Section 1028 of the Act "AUTHORITY TO RESTRICT MANDATORY PRE-DISPUTE ARBITRATION," [*11] which amended *12 U.S.C. § 5518* by granting to the newly created Bureau of Consumer Financial Protection (the "Bureau") the authority to restrict mandatory predispute arbitration between a consumer and a "covered person:" [2]

> (b) FURTHER AUTHORITY.--The Bureau, by regulation, may prohibit or impose conditions or limitations on the use of an agreement between a covered person and a consumer for a consumer financial product or service providing for arbitration of *any future dispute* between the parties, if the Bureau finds that such a prohibition or imposition of conditions or limitations is in the public interest and for the protection of consumers. The findings in such rule shall be consistent with the study conducted under subsection (a).

§ 1028, 124 Stat. at 2004 (emphasis added). For purposes of Section 1028, not only is the Bureau's authority granted with respect to future disputes, but Congress made clear that this section applies only to agreements entered into *after* the end of the 180-day period beginning on the effective date of the regulation established by the Bureau:

> (d) EFFECTIVE DATE.--Notwithstanding any other provision of law, any regulation prescribed by the Bureau under subsection (b) [*12] shall apply, consistent with the terms of the regulation, to *any agreement between a consumer and a covered person entered into after the end of the 180-day period beginning on the effective date of the regulation*, as established by the Bureau.

*Id.* (emphasis added).

  2   For purposes of Section 1028 of the Act, a "covered person" means:

> (A) any person that engages in offering or providing a consumer financial product or service; and
> (B) any affiliate of a person described in subparagraph
>> (A) if such affiliate acts as a service provider to such person.

Dodd-Frank Act, § 1002, 124 Stat. at 1956.

The *third* category - sections for which Congress did not express any intent regarding retroactivity includes, in addition to *Section 922* at issue before me, Section 748 of the Act "COMMODITY WHISTLEBLOWER INCENTIVES AND PROTECTION," which amended the Commodity Exchange Act, *7 U.S.C. 1 et seq.*, by voiding arbitration agreements regarding disputes resulting in the payment by the Commission of awards to whistleblowers: [3]

> (n) NONENFORCEABILITY OF CERTAIN PROVISIONS WAIVING RIGHTS AND REMEDIES OR REQUIRING ARBITRATION OF DISPUTES.--
> (1) WAIVER OF RIGHTS AND REMEDIES.--The rights and remedies provided for in this [*13] section may not be waived by any agreement, policy form, or condition of employment including by a predispute arbitration agreement.
> (2) PREDISPUTE ARBITRATION AGREEMENTS.--No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section.

§ 748, 124 Stat. at 1746. For purposes of this section, there is, however, no indication as to whether Congress intended this section to apply to *existing* arbitration agreements.

  3   Section 748 provides, in relevant part, that:

> In any covered judicial or administrative action, or related action, the Commission, under regulations prescribed by the Commission and subject to subsection (c), shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of the covered judicial or administrative action, or related action.

§ 748, 124 Stat. at 1740. The term "covered judicial or administrative action" means "any judicial or administrative action brought by the Commission under this Act that results in monetary sanctions exceeding $1,000,000." *Id.* In addition, the term "whistleblower" refers [*14] to "any individual, or 2 or more individuals acting jointly, who provides information relating to a violation of this Act to the Commission, in a manner established by rule or regulation by the Commission." *Id.*

Also included in this third category is Section 1057 of the Act "EMPLOYEE PROTECTION," which restricts predispute arbitration for certain "covered employees:" [4]

> (d) UNENFORCEABILITY OF CERTAIN AGREEMENTS.--
>
> (1) NO WAIVER OF RIGHTS AND REMEDIES.--Except as provided under paragraph (3), and notwithstanding any other provision of law, the rights and remedies provided for in this section may not be waived by any agreement, policy, form, or condition of employment, including by any predispute arbitration agreement.
>
> (2) NO PREDISPUTE ARBITRATION AGREEMENTS.--Except as provided under paragraph (3), and notwithstanding any other provision of law, no predispute arbitration agreement shall be valid or enforceable to the extent that it requires arbitration of a dispute arising under this section.
>
> (3) EXCEPTION.--Notwithstanding paragraphs (1) and (2), an arbitration provision in a collective bargaining agreement shall be enforceable as to disputes arising under subsection (a)(4), unless the Bureau [*15] determines, by rule, that such provision is inconsistent with the purposes of this title.

§ 1057, 124 Stat. at 2035. Apart from Section 1058, which provides that "[t]his subtitle shall become effective on the designated transfer date," the congressional intent regarding the temporal reach of Section 1057 remains unclear.

---

4  For purposes of Section 1057 of the Act, the term "covered employee" means "any individual performing tasks related to the offering or provision of a consumer financial product or service." § 1057, 124 Stat. at 2032.

Equally unclear is whether Congress intended *Section 1414* of the Act "ADDITIONAL STANDARDS AND REQUIREMENTS" to be applied retroactively. *Section 1414* amended Section 129C of the Truth in Lending Act, *15 U.S.C. § 1601 et seq.*, by restricting the use of predispute arbitration provisions for certain residential mortgage loans and extensions of credit:

> (e) ARBITRATION.--
>
> (1) IN GENERAL.--No residential mortgage loan and no extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer may include terms which require arbitration or any other nonjudicial procedure as the method for resolving any controversy or settling [*16] any claims arising out of the transaction.
>
> (2) POST-CONTROVERSY AGREEMENTS.--Subject to paragraph (3), paragraph (1) shall not be construed as limiting the right of the consumer and the creditor or any assignee to agree to arbitration or any other nonjudicial procedure as the method for resolving any controversy at any time after a dispute or claim under the transaction arises.
>
> (3) NO WAIVER OF STATUTORY CAUSE OF ACTION.--No provision of any residential mortgage loan or of any extension of credit under an open end consumer credit plan secured by the principal dwelling of the consumer, and no other agreement between the consumer and the creditor relating to the residential mortgage loan or extension of credit referred to in paragraph (1), shall be applied or interpreted so as to bar a consumer from bringing an action in an appropriate district court of the United States, or any other court of competent jurisdiction, pursuant to section 130 or any other provision of law, for damages or other relief in connection with any alleged violation of this section, any other provision of this title, or any other Federal law.

§ 1414, 124 Stat. at 2151.

3. Intent Unclear

I find congressional intent regarding [*17] the temporal reach of Section 922 of the Act, the section in dispute here, to be far from clear. The mere fact that Congress expressly vested the Bureau and the Commission with the authority to restrict predispute arbitration with respect to *future disputes* as opposed *existing* disputes or arbitration agreements, *see* Sections 921 and 1028, is insufficient to show that Congress intended Section 922 to be applied retroactively. Similarly insufficient is the fact that Congress granted this authority to the Bureau only with respect to agreements entered into *after* a certain time period following the effective date of the Act. *See* Section 1028 of the Act. To the contrary, the lack of clarity and the presumption against the retroactive application of ambiguous statutory provisions, when coupled with the "national policy favoring arbitration of claims that parties contract to settle in that manner," *Preston, 552 U.S. at 353* (internal quotation marks and citation omitted), are impediments to the conclusion that, in enacting Section 922, "Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the [*18] countervailing benefits." *Landgraf, 511 U.S. at 272-73*. It does not appear Congress did so when enacting the sprawling Dodd-Frank legislation. I therefore proceed to the second step of the analysis.

**B. Retroactive Consequence**

The second step of the analysis is to determine whether Section 922 of the Act would produce any prejudicial "retroactive consequence." *Fernandez-Vargas, 548 U.S. at 37*. "A statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.'" *Landgraf, 511 U.S. at 269 n.24* (quoting *Cox v. Hart, 260 U.S. 427, 435 (1922))*. Rather, a statute has a retroactive effect when "it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id. at 280*.

The difficulty here is that Section 922 of the Act appears to fall, at least arguably, within the scope of two competing types of statutes referred to in *Landgraf.* The *first* type involves statutes "affecting contractual or property rights." *Id. at 271.* Section 922 of the Act voids contractual arbitration provisions agreed upon by the parties. An agreement to arbitrate is treated like any [*19] other contract. *See 9 U.S.C. § 2* ("an agreement in writing to submit to arbitration an existing controversy arising out of . . . a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."). The Supreme Court has found this is "[t]he largest category of cases in which [it] ha[s] applied the presumption against statutory retroactivity," on the ground that this type of statute relates to "matters in which predictability and stability are of prime importance." *Landgraf, 511 U.S. at 271*.

Courts have refused to apply retroactively state statutes voiding certain arbitration provisions on the basis that such statutes affected contractual rights and therefore has retroactive effect. *See Andrews v. Commoloco, Inc.*, No. 2003/0066, 2009 WL 2413684, at *2 (D. V.I. Aug. 4, 2009) (refusing to apply retroactively a Virgin Islands statute that rendered unenforceable contractual waivers unless made knowingly and voluntarily because such "statute would have retroactive effect*,"* in particular with respect to the enforceability of the arbitration provision containing such waiver); *M.A. Mortenson/Meyne Co. v. Edward E. Gillen Co.*, No. 03-5135, 2003 WL 23024511, at *3 (D. Minn. Dec. 17, 2003) [*20] (declining to apply retroactively Illinois statute invalidating arbitration provisions in building and construction contracts because this statute "substantively affects a contract term that the parties expressly agreed to" and "thus directly impairs the parties' substantive right to contract.").

The *second* type of statute relevant for purposes of this analysis are those "conferring or ousting jurisdiction." *Landgraf, 511 U.S. at 274*. Section 922 of the Act confers, by voiding arbitration agreements, jurisdiction to the courts, rather than to a Financial Industry Regulatory Authority ("FINRA") arbitration panel. The Supreme Court has recognized that, even absent specific legislative authorization, jurisdictional statutes may be applied in suits arising before their enactment without raising concerns about retroactivity. *Id.* The rationale is that this type of statute "takes away no substantive right but simply changes the tribunal that is to hear the case." *Hamdan v. Rumsfeld, 548 U.S. 557, 577 (2006)* (quoting *Hallowell v. Commons, 239 U.S. 506, 508 (1916))*. In other words, present law governs in such a case because statutes conferring or ousting jurisdiction "speak to the power of the [*21] court rather than to the rights or obligations of the parties." *Landgraf, 511 U.S. at 274* (quoting *Republic Nat'l Bank of Miami v. United States, 506 U.S. 80, 100 (1992))*.

While Section 922 affects the validity of the arbitration clause, a contractual term agreed upon by the parties, I am of the view that this section principally concerns the type of jurisdictional statute envisioned in *Landgraf.* As the Supreme Court held, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)* (quoting *Mitsubishi Motors Corp. v.*

Case 4:09-cv-04036   Document 31   Filed in TXSD on 03/04/11   Page 9 of 9

Page 7
2011 U.S. Dist. LEXIS 20038, *

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (alteration in original); *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 486 (1989) ("resort to the arbitration process does not inherently undermine any of the substantive rights afforded to petitioners under the Securities Act."); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 205-06 (2d Cir. 1999) ("the substantive rights found in the statute are not in any way diminished by our [*22] holding that arbitration may be compelled in this case, since only the forum -an arbitral rather than a judicial one - is affected, and plaintiff's rights may be as fully vindicated in the former as in the latter."); *St. Paul Fire & Marine Ins. Co. v. Employers Reinsurance Corp.*, 919 F. Supp. 133, 139 (S.D.N.Y. 1996) (applying retroactively Kansas Arbitration Act which provides that arbitration clauses in reinsurance contracts are valid, enforceable, and irrevocable because this statute "affects only a procedural right" and "the parties' substantive rights remain amply protected."); *Pitter v. Prudential Life Ins. Co. of Am.*, 906 F. Supp. 130, 134 (E.D.N.Y. 1995) (holding that the 1993 amendments to the NASD Code imposing mandatory arbitration of employment disputes "deal, after all, only with the forum where employment claims will be heard. They do not alter the substantive rights conferred by Congress on employees.").

The parties do not claim that a different substantive result will obtain merely because Pezza's claim will be heard by a court rather than by a FINRA arbitration panel. Consequently, I conclude that Section 922 of the Act should also be applied to conduct that arose *prior* [*23] to its enactment.

### IV. CONCLUSION

In the absence of clear legislative intent to limit the temporal reach of Section 922 of the Act and given the procedural -- as opposed to a substantive -- character of Section 922, I conclude that this Court, rather than a FINRA arbitration panel, has subject matter jurisdiction over Pezza's whistleblower claim. Accordingly, I DENY the defendants' motion to compel arbitration. (Dkt. No. 10.)

*/s/ Douglas P. Woodlock*

DOUGLAS P. WOODLOCK

UNITED STATES DISTRICT JUDGE