IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GWENN HILLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-4036 |
| | § | |
| MERITAGE HOMES OF TEXAS, LLC | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case. Gwenn Hiller sued her former employer, Meritage Homes of Texas, LLC, alleging sexual harassment and sex discrimination under Title VII of the Civil Rights Act of 1964, and retaliation in violation of Title VII and Chapter 21 of the Texas Labor Code. (Docket Entry No. 1). Meritage Texas has filed a motion to compel arbitration based on an agreement Hiller signed before she began working for a predecessor company of Meritage Texas. (Docket Entry No. 6). Hiller responded, (Docket Entry No. 9); Meritage Texas replied, (Docket Entry No. 11); Hiller surreplied, (Docket Entry No. 15); and this court held oral argument on the motion.[1] Based on the motion, response, and replies; the parties' submissions; the arguments of counsel; and the applicable law, Meritage Texas's motion to compel arbitration is denied. The reasons for this ruling are set out below.

**1.    Background**

The defendant is Meritage Homes of Texas, LLC (Meritage Texas), an Arizona company and

---

[1] This court also asked the parties to discuss whether the Supreme Court's decision in *Rent-A-Center, West, Inc. v. Jackson*, --- U.S. ----, 130 S. Ct. 2772 (2010). Both parties filed additional briefing. (Docket Entries No. 20, 21). The parties agree that the Supreme Court's decision does not impact their dispute.

1

a subsidiary of Meritage Homes of Texas Holdings, Inc., an Arizona corporation. (Docket Entry No. 7–4). Meritage Corporation is the parent company of Meritage Homes of Texas Holdings.[2] (*Id.*). Meritage Texas was created in June 2007, when Meritage Homes of Texas, LP and Meritage Homes of Texas II, LLC—both former subsidiaries of Meritage Corporation—merged. (*Id.*). Meritage Texas is currently the operating entity of Meritage Corporation's home-building business in Texas. The only employer of the Texas employees is Meritage Texas. (*Id.*).

The plaintiff, Gwenn Hiller, was hired on June 19, 2003, before Meritage Homes of Texas, LP and Meritage Homes of Texas II, LLC merged to form Meritage Texas. The record does not disclose which of these two former subsidiaries employed Hiller from 2003 until the creation of Meritage Texas in 2007.

Before she began working in 2003, Hiller was required to sign an arbitration agreement. (Docket Entry No. 6). The parties to the agreement were Hiller and "Meritage Corporation, its current and former agents, owners, officers, directors, or employees ('Company')." The agreement did not name either of the subsidiaries that merged to form Meritage Texas. Nor did the agreement specify that "Meritage Corporation" included its subsidiaries or affiliates. The agreement stated that the parties would arbitrate "any dispute, claim, or controversy ('claim') between them arising out of the employment relationship." (Docket Entry No. 7-1). The agreement specifically required arbitration of Title VII claims:

> This Arbitration Agreement ("Agreement") includes all claims which could have been brought before any government agency or in a court proceeding, including but not limited to, claims under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, or other applicable federal, state or local laws (excluding claims for

---

[2] In September 2004, Meritage Corporation changed its name to Meritage Homes Corporation. (Docket Entry No. 7–4).

>   unemployment compensation or worker's compensation benefits to
>   remedy work-related injury or illness.

(*Id.*). The agreement also stated that Hiller could not begin or continue her employment with Meritage Corporation until she signed the agreement:

>   The Employee understands that he/she will not be hired or remain employed by the Company if Employee does not sign this Agreement. The Employee signs it in consideration of employment by the Company. The Employee has been advised of his/her right to consult with counsel regarding this Agreement, and the Agreement to accept arbitration can be revoked any time within 7 days of the Employee's signing this agreement, but such revocation must be signed in writing, and will result in the immediate termination and/or denial of consideration of employment.

(*Id.*). The agreement had a choice-of-law provision specifying Arizona law. The agreement included signature blocks for Hiller and Meritage Corporation. Hiller signed; there is no signature for Meritage Corporation.

On February 8, 2008, Hiller resigned from Meritage Texas. (Docket EntryNo. 7-5). On December 18, 2009, Hiller filed this suit, alleging a sexually hostile-work environment, sex discrimination, and retaliation claims under Title VII. (Docket Entry No. 1). Meritage Texas moved to compel arbitration. Hiller responded that Meritage Texas cannot compel arbitration because her agreement was with Meritage Corporation, not its subsidiaries or affiliates. (Docket Entry No. 9). Meritage Texas replied that the agreement is enforceable because Hiller understood the agreement to be with her current employer, a subsidiary of Meritage Corporation. Alternatively, Meritage Texas replied that the agreement should be enforced under the doctrine of equitable estoppel. (Docket Entry No. 11). Hiller surreplied. (Docket Entry No. 15).[3]

---

[3] In a supplemental brief, Hiller also argued that the Dodd–Frank Wall Street Reform and Consumer Protection Act, Pub. L. 111-203, invalidated the arbitration agreement. (Docket Entry No. 22). Section 922(c)(2) of the Dodd–Frank act provides that "predispute arbitration agreement[s]" to arbitrate whistleblower claims under federal securities law are not enforceable. Because Meritage Texas's motion to compel arbitration is denied, this court does not reach this issue.

## II.     The Applicable Law

District courts must enforce valid arbitration agreements under the Federal Arbitration Act, 9 U.S.C. § 2.[4] Under the FAA, federal courts generally determine two issues: whether a valid agreement to arbitrate exists and whether a particular dispute is covered by the terms of the arbitration agreement. *Green Tree Financial Corporation v. Bazzle,* 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003);  *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1321 (5th Cir. 1994).  A court must first decide "whether the parties agreed to arbitrate the dispute in question.  This involves two inquiries:  (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Tittle v. Enron Corp*., No. 05-20380, 2006 WL 2522444, at *6 (5th Cir. Sep. 1, 2006) (quoting *Webb v. Investacorp*, 89 F.3d 252, 258 (5th Cir. 1996)).  "Generally under the FAA, state law governs whether a litigant agreed to arbitrate, and federal law determines the scope of the arbitration clause." *In re Weekley Homes*, 180 S.W.3d 127 (Tex. 2005);  *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1077–78 (5th Cir. 2002), *opinion supplemented on denial of rehearing*, 303 F.3d 570 (5th Cir. 2002) (same).

If there is a binding agreement to arbitrate, the court must then decide whether the dispute is within the scope of that agreement. *Tittle*, 2006 WL 2522444, at *6 (5th Cir. Sep. 1, 2006). "The

---

[4]  Section 2 states:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Federal Arbitration Act (FAA) expresses a strong national policy favoring arbitration of disputes, and all doubts concerning the arbitrability of claims should be resolved in favor of arbitration." *Wash. Mut. Fin. Group, L.L.C. v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004) (quotations omitted); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The duty to arbitrate remains one of contract; a court cannot compel parties to arbitrate issues they have not agreed to submit. *Tittle*, 2006 WL 2522444 at *5 (citing *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990) ("A party cannot be compelled to submit a dispute to arbitration unless there has been a contractual agreement to do so.")).

Finally, the court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Tittle*, 2006 WL 252244, at *6 (citing *Mitsubishi Motors Corp. v. Soler Chrsyler-Plymouth*, 473 U.S. 614, 628 (1985)). The parties have not alleged such constraints in this case. Questions of contract interpretation to decide whether the agreement to arbitrate is valid and whether it covers the disputes at issue are for the courts to decide. *Green Tree,* 539 U.S. at 452. The questions of contract interpretation are decided under state law. *Banc One*, 367 F.3d at 429.

In deciding whether the parties have agreed to arbitrate the claims at issue, district courts should not construe doubts in favor of arbitration, but instead "generally apply ordinary state-law principles that govern the formation of contracts." *Webb*, 89 F.3d at 258 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995)). Once a valid arbitration agreement is found, the federal policy of construing doubts in favor of arbitration arises. *Am. Heritage Life Ins. Co.*, 321 F.3d at 536.

**III.    Analysis**

    **A.    A Valid Agreement to Arbitrate**

Hiller asserts that if there is a valid arbitration agreement, it is not with Meritage Texas, her former employer. She argues that the agreement covers only her disputes with Meritage Corporation, defined in the agreement to its "current and former agents, owners, officers, directors, or employees." It is undisputed that the agreement did not define Meritage Texas to include future agents, etc., or to include successor entities, subsidiaries, or affiliates. Meritage Texas was not formed until after the agreement was reached. Meritage Texas does not argue that Meritage Corporation ever employed Hiller. The record does not reveal which of the two former subsidiaries — Meritage Homes of Texas, LP or Meritage Homes of Texas II, LLC — employed Hiller before they merged to form Meritage Texas. Instead, Meritage Texas argues that it may require Hiller to arbitrate her claims because Hiller understood that she was not going to be employed by Meritage Corporation when she signed the employment agreement with that company. Meritage Texas asserts that Hiller must have intended to arbitrate this dispute because the arbitration agreement pertained to her employment and Hiller was not employed by Meritage Corporation. But the agreement states that it is between Hiller and Meritage Corporation, a term defined in a way that does not include successor, affiliates, or subsidiaries.

Meritage Texas appears to ask this court to reform the contract so that it applies not only to Meritage Corporation but also to its present or future subsidiaries. Reformation of a contract requires two elements: (1) an original agreement; and (2) a mutual mistake, made after the original agreement, in reducing the original agreement to writing. Cherokee *Water Co. v. Forderhause*, 741 S.W.2d 377, 379 (Tex.1987) (citations omitted). "One seeking reformation of a written instrument must prove that the erroneously written, included, or omitted provision in the instrument was there or was omitted by mutual mistake." *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 171 (Tex. App.—Dallas Jan.7, 2008, no pet.) (quoting *Huttleston v. Beacon Nat'l Ins. Co.*, 822 S.W.2d

6

741, 746 (Tex. App.—Fort Worth 1992, writ denied)). Proof of the opposing party's prior agreement to an omitted term is an essential element of the equitable remedy of reformation. *Id.* (citing *Champlin Oil & Ref. Co. v. Chastain*, 403 S.W.2d 376, 382 (Tex. 1966)). "One is presumed to intend what he does or undertakes to do by the terms of a written instrument voluntarily signed by him." *Champlin Oil*, 403 S.W.3d at 382 ("We are therefore required to start with the presumption that [the defendant] intended to contract [as the contract's language indicates].").[5] Meritage Texas has not alleged or argued mistake. *See* Fed. R. Civ. P. 9(b) (requiring mistake to be alleged with particularity). Meritage Texas has also not identified which Meritage entity Hiller worked for, let alone which entity it claims she agreed to arbitrate her disputes with. Meritage Texas has produced no evidence other than the agreement and the fact of Hiller's employment to support the argument that she intended to agree to arbitrate her dispute with parties other than Meritage Corporation. The record does not show that Hiller agreed to arbitrate with Meritage Texas.

### B.  Equitable Estoppel

Meritage Texas also argues that Hiller is equitably estopped from contesting the arbitration clause because the arbitration agreement provided the basis for her employment. The relevant language states: "[t]he Employee understands that he/she will not be hired or remain employed by the company if Employee does not sign this agreement." (Docket Entry No. 7-1). "In certain limited instances, pursuant to an equitable estoppel doctrine, a nonsignatory-to-an-arbitration-agreement-defendant can nevertheless compel arbitration against a signatory-plaintiff." *Grigson v.*

---

[5]  Meritage Texas contends that Arizona law governs the parties' contract formation dispute because the agreement's choice-of-law provision called for Arizona law. Because the relevant Arizona law appears to be the same as Texas law, it is not necessary to decide whether Arizona or Texas law applies . *See Isaak v. Mass. Indem. Life Ins. Co.*, 623 P.2d 11, 14 (Ariz. 1981); *Four Seas Prop. Mgmt., LLC v. Brown*, No. 1 CA-CV 08-0831, 2009 WL 5062126, at *3 (Ariz. Ct. App. Dec. 24, 2009); *Nelson v. Rice*, 12 P.3d 238, 241 & n.1 (Ariz. Ct. App. 2000).

7

*Creative Artists Agency, L.L.C.*, 210 F.3d 524, 526 (5th Cir. 2000). In *Grigson*, the court set out the test for equitable estoppel:

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances. First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Id.* at 527 (quoting *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999)) (italics removed). *Grigson*'s facts satisfied both prongs. The court noted that "equitable estoppel is much more readily applicable when the case presents both independent bases." *Id.* The court clarified that "whether to utilize equitable estoppel in this fashion is within the district court's discretion." *Id.* at 528.[6] Subsequent cases have found estoppel based on either prong. *See QPro Inc. v. RTD Quality Servs. USA Inc.*, — F. Supp. 2d. —, 2011 WL 13675, at *6–10 (S.D. Tex. Jan. 4, 2011).

Meritage Texas argues only the first prong of the *Grigson* test. To satisfy the first prong, "the claim raised in the litigation must rely on the language of the agreement containing the arbitration clause, rather than just presume its existence." *Id.* at *7; *accord Vinewood Capital, LLC v. al-Malal al-Islami Trust*, No. 4:06-CV-361-Y, 207 WL 2791876, at *6 (N.D. Tex. Aug. Sept. 26, 2007), *aff'd* 295 F. App'x 726 (5th Cir. 2008) ("The first basis requires a signatory's claim to

---

[6] This court recently analyzed the case law interpreting both prongs of the *Grigson* test in *QPro Inc. v. RTD Quality Servs. USA Inc.*, — F. Supp. 2d. —, 2011 WL 13675 (S.D. Tex. Jan. 4, 2011).

completely rely on the terms of an agreement that contains an arbitration clause."). One court, for example, refused to compel a nonsignatory's fraud claim against a law firm, because a "fraud claim, by its nature, does not depend on the terms of a contract." *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, Civ. A. No. 4:10-CV-220, 2010 WL 3283043, at *6–7 (N.D. Tex. Aug. 19, 2010); *see also QPro*, 2011 WL 13675, at *7 (finding that a tortious interference claim did not satisfy the first prong because it did "not rely on the terms of the lease agreement"); *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (concluding that a nonsignatory could not invoke arbitration clause when the plaintiff's claims "[presumed]" the existence of the agreement but did not rely upon its terms).

Under the applicable precedents, that fact Hiller had to sign the arbitration agreement as a condition for employment is an insufficient basis to compel her to arbitrate the claims she raises in this case. Hiller's claims do not rely on the terms of the arbitration agreement. Hiller asserts employment discrimination claims independent of the terms of the arbitration agreement. Equitable estoppel is inapplicable.

Meritage Texas's reliance on *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500 (S.D.N.Y. 2009), does not help its argument. In *Bimota*, Bimota SPA ("Bimota"), an Italian motorbike manufacturer, agreed to sell products to Bimota of North America, Inc., the exclusive distributor of Bimota motorbikes in the United States. The sales agreement stated that "any claims between the parties to this Agreement that cannot be resolved by negotiation between the parties shall be submitted to arbitration." *Id.* at 503. After Bimota of North America refused to pay for some motorbikes, Bimota sued the company's CEO and its controlling shareholder. The defendants invoked the arbitration provision. The court noted that:

> A non-signatory may compel arbitration on an estoppel theory, where
> (i) there is a close relationship between the parties and controversies

>    involved and (ii) the signatory's claims against the non-signatory are
>    intimately founded in and intertwined with the underlying agreement
>    containing the arbitration clause. Claims are intertwined where the
>    merits of an issue between the parties is bound up with a contract
>    binding one party and containing an arbitration clause.

*Id.* at 504 (quotations, citation, and alterations omitted). The court determined that the arbitration provision applied. Bimota's liability theory involved proving conversion based on the failure by Bimota of North America to pay for the motorbikes as required in the agreement containing the arbitration clause and on piercing the corporate veil. By contrast, Hiller's claims in this suit are not intertwined with the agreement containing the arbitration clause. Nor has she attempted to pierce the veil between Meritage Corporation and Meritage Texas. *Bimota* does not apply. Equitable estoppel provides no basis to compel Hiller to arbitrate.

**IV.   Conclusion**

The motion to compel arbitration, (Docket Entry No. 7), is denied.

SIGNED on March 31, 2011, at Houston, Texas.

                                                   Lee H. Rosenthal
                                        United States District Judge